[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10894
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:09-cr-00056-CAR-CWH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CURTIS JAMES HUDSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 9, 2011)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Pursuant to a plea agreement, Curtis Hudson pled guilty to two counts of a

three-count indictment: possession with intent to distribute more than five grams

of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(B)(iii) (Count One), and possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g) (Count Three). The district court sentenced Hudson to concurrent prison sentences: 145 months on Count One,[1] and 120 months on Count Three. He now appeals his sentences.[2]

First, Hudson argues that the district court infringed his constitutional rights to due process and equal protection of the laws by applying the Guidelines sentence range for crack cocaine, which is higher than the sentence range for powder cocaine, in fashioning his Count One sentence. Second, Hudson argues that Count One sentence is procedurally and substantively unreasonable because the district court afforded *de facto* mandatory treatment to the guideline for crack cocaine, failed to give due consideration to the 18 U.S.C. § 3553(a) sentencing factors, failed to explain the sentence pursuant to 18 U.S.C. § 3553(c), and did not sentence him based on a "1-to-1" crack-to-powder cocaine ratio.

I.

---

[1] The sentence range prescribed by the Guidelines for the Count One offense was 130-162 months' imprisonment.

[2] Hudson appeals both sentences. The grounds for reversal, however, apply only to the Count One sentence. Therefore, in this opinion, our discussion is limited to the Count One sentence, although our disposition affirms the district court's entire judgment, i.e., both sentences.

We review constitutional claims *de novo*.  *United States v. Tagg*, 572 F.3d 1320, 1325 (11th Cir. 2009).  Under the rational basis test, "a law does not violate equal protection so long as [it is] rationally related to a legitimate government interest."  *United States v. Campos-Diaz*, 472 F.3d 1278, 1280 (11th Cir. 2006) (quotation omitted).

We have rejected an equal protection challenge to the "100-to-1" crack-to-powder cocaine sentencing disparity in the Sentencing Guidelines. *United States v. King*, 972 F.2d 1259, 1260 (11th Cir. 1992).  After *King*, the Sentencing Commission promulgated Amendment 706, which took effect on November 1, 2007, and amended the Drug Quantity Table in Sentencing Guidelines § 2D1.1(c).  U.S.S.G. App. C, Amend. 706.  The effect of Amendment 706 was to provide a two-level reduction in base offense levels for certain crack cocaine offenses.  *See id.*; *United States v. Mills*, 613 F.3d 1070, 1075 (11th Cir. 2010).  In explaining the reasoning for Amendment 706, the Commission noted that it had "updated its analysis of key sentencing data about cocaine offenses and offenders," based on scientific literature; trends in trafficking patterns, price, and use; state drug laws; and relevant case law.  U.S.S.G. App. C, Amend. 706, Reason for Amendment.  It concluded that there was an "urgent" and "compelling" need to correct problems associated with the "100-to-1" crack-to-powder cocaine

3

ratio, and that Amendment 706 was "an interim measure" to correct those problems. *Id.*

In *Kimbrough*, the Supreme Court noted that a number of Congressional concerns that led to the "100-to-1" disparity rested on discredited assumptions about crack cocaine. *Kimbrough v. United States*, 552 U.S. 85, 95-98, 128 S.Ct. 558, 567-68, 169 L.Ed.2d 481 (2007). In holding that district courts may depart from the crack cocaine guidelines based on their disagreement with the crack-to-powder cocaine disparity, the Court noted that "the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." *Id.* at 110, 128 S.Ct. at 575. Even so, the Court noted that the Commission's most recent reports acknowledged that "some differential" in treatment was warranted. *Id.* at 98, 128 S.Ct. at 568.

The Fair Sentencing Act ("FSA"), signed into law on August 3, 2010, changed the crack-to-powder ratio from 100:1 to about 18:1. *See* Pub.L.No 111-220, 124 Stat. 2372. The Act amended the sentencing provisions in 21 U.S.C. § 841(b)(1) by raising from 50 grams to 280 grams the amount of crack cocaine necessary to trigger a 10-year mandatory minimum sentence, and raising the amount from 5 to 28 grams necessary to trigger a 5-year mandatory minimum. *Id.*

4

§ 2(a)(1)-(2). However, because the FSA took effect in August 2010, the punishment of crimes committed before August 2010 is not affected by the Act pursuant to 1 U.S.C. § 109. *See United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010) (holding that § 109 bars the FSA from affecting the punishment of a defendant who had committed the crime before the FSA took effect).

The district court's consideration of the crack cocaine guidelines did not deny Hudson equal protection of the law, even after the developments set forth above. While the Supreme Court noted in *Kimbrough* that the Sentencing Commission viewed Amendment 706 as "'only . . . a partial remedy,'" it also noted that the Commission supported a ratio in excess of "1-to-1." Furthermore, Hudson was not sentenced based on a 100:1 ratio; rather, he was sentenced based on guidelines that had a crack/powder ratio of between 25:1 and 80:1. Finally, in *King*, we rejected the argument that the crack/powder disparity denied equal protection of the law, and under the prior precedent rule, we are "bound to follow a prior binding precedent unless and until it is overruled by this [C]ourt en banc or by the Supreme Court." *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation omitted). In sum, the district court did not err in applying the crack cocaine guidelines to Hudson.

II.

5

We review a sentence for reasonableness. *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005). The reasonableness standard means review for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). We review *de novo* whether a sentence is procedurally reasonable based on the sufficiency of the district court's explanation under § 3553(c)(1). *United States v. Ghertler*, 605 F.3d 1256, 1261-62 (11th Cir. 2010).

A sentence is procedurally unreasonable if the district court failed to calculate or incorrectly calculated the Guidelines, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

The § 3553(a) factors include (1) the applicable guideline sentence range; (2) the nature and circumstances of the offense; (3) the history and characteristics of the defendant; (4) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (5) the need for adequate deterrence to criminal conduct; (6) protection of the public from further crimes of the defendant; and (7) the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1)-(7).

In imposing a sentence, the court must state its reasons for the sentence. 18

U.S.C. § 3553(c). There is no requirement under § 3553(c) that the court explicitly reveal its consideration of each of the § 3553(a) factors on the record, as long as the court "set[s] forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). In a "typical" case involving a sentence within the advisory guideline sentence range, "the district court is not required to give a lengthy explanation for its sentence." *United States v. Livesay*, 525 F.3d 1081, 1090 (11th Cir. 2008); *see also United States v. Ellisor*, 522 F.3d 1255, 1278 (11th Cir. 2008) (stating that we have "held that a court's explicit acknowledgment that it has considered a defendant's arguments and the § 3553(a) factors is sufficient to demonstrate that it has adequately and properly considered these factors").

Once we conclude that the district court made no procedural errors, we then consider "the substantive reasonableness of the sentence," under the totality of the circumstances. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. The weighing of § 3553(a) factors is within the court's discretion, so long as the court has made no clear error of judgment. *See United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (reviewing government appeal of downward variance).

7

The Supreme Court previously considered the sentence of a defendant who had been sentenced under the November 1, 2004, version of the Guidelines and was affected by the "100-to-1" ratio then in effect. *Kimbrough*, 552 at 91, 92 n.2, 128 S.Ct. at 564, 565 n.2 (2007). In *Kimbrough*, the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case," such that district courts possess the authority to deviate from the "100-to-1" ratio. *Id.* at 110, 128 S.Ct. at 575. However, the "ultimate question" still is whether the sentence is reasonable. *Id.* at 111, 128 S.Ct. at 576.

Hudson's Count One sentence is procedurally reasonable. The district court did not treat the Guidelines as *de facto* mandatory, because (a) it explicitly acknowledged that the Guidelines were advisory, (b) it stated that it was not bound to apply the Guidelines, and (b) it stated that it was deciding not to vary downward based on its unanswered questions about why the Sentencing Commission has still not definitively decided how to resolve the crack/powder disparity. Additionally, the court expressly stated that it had considered the § 3553(a) factors and demonstrated that consideration by discussing the nature of the underlying offense and the sentencing disparity between crack and powder cocaine. By finding that

8

the § 3553(a) factors and the totality of the circumstances justified Hudson's sentence, the court provided an explanation sufficient to allow for meaningful appellate review. Accordingly, the court committed no procedural error.

Hudson's 145-month sentence was substantively reasonable because it was supported by the § 3553(a) factors. The court balanced Hudson's arguments for mitigation based on the disparity between crack cocaine and powder cocaine sentences against the Government's argument that a departure was not warranted because of Hudson's significant criminal history. Moreover, the record reflects that the court gave due consideration to mitigating factors because Hudson's sentence fell in the middle of the crack-cocaine guideline sentence range—which already addressed the sentencing disparity to some degree in light of Amendment 706—and was substantially below the statutory maximum term of 40 years' imprisonment.

AFFIRMED.